USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/20/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                                        :

YANET VARGAS,                           :

                          Plaintiff,     :       16-CV-3385 (VSB) (SN)

                -v-                  :       **OPINION AND ORDER**

NANCY A. BERRYHILL, ACTING     :
COMMISSIONER OF SOCIAL SECURITY,  :

                       Defendant.  :
-------------------------------------------------------- X

Appearances:

Christopher J. Bowes
Center for Disability Advocacy Rights, Inc.
Shoreham, New York
*Counsel for Plaintiff*

Leslie A. Ramirez-Fisher
United States Attorney's Office
New York, New York
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

       Plaintiff Yanet Vargas brings this action pursuant to § 205(g) of the Social Security Act (the "SSA"), 42 U.S.C. § 405(g), seeking judicial review of a determination by the Commissioner of Social Security (the "Commissioner") that she is not entitled to Supplemental Security Income ("SSI"). Plaintiff and Defendant cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. On May 25, 2017, Magistrate Judge Sarah Netburn issued a detailed and thorough Report and Recommendation ("Report" or "R&R") recommending that Plaintiff's motion for judgment on the pleadings be denied and the Commissioner's cross-motion for judgment on the pleadings be granted. (Doc. 25.) Before me

are Plaintiff's objections to the R&R. Because the Appeals Council failed to consider certain new evidence in making its determination to deny review of the ALJ's decision, I find that remand to the Commissioner for further proceedings to consider this new evidence is appropriate pursuant to § 405(g), and therefore reject the Report in part.

## I. **Factual Background and Procedural History**

I assume the parties' familiarity with the facts and record of prior proceedings, and restate briefly only the information necessary to explain my decision.[1]

Plaintiff has an extensive medical history, only portions of which I recount here. On October 30, 2012, Plaintiff was admitted to New York Presbyterian Hospital ("NYPH") due to complaints of lightheadedness and a rapid onset of right-sided numbness. (R&R 3.)[2] She was evaluated for a stroke, but a CT scan revealed no evidence of one. (*Id.* at 4.) She was ultimately determined to have a non-ST segment elevation myocardial infarction ("NSTEMI"), a type of heart attack. (*Id.*) Plaintiff was discharged on November 8, 2012 with a diagnosis of pneumonia, asthma exacerbation, and demand ischemia. (*Id.*)

Plaintiff visited physicians at NYPH, as well as the emergency room, many times over the next several months. She complained of migraine headaches, sinusitis, gastritis, a pinched nerve in her back, blurry vision, pain in her right shoulder, arm, and mid-back, intermittent chest pain, shortness of breath, and she displayed poor understanding of the results of the tests performed during her hospitalization. (*Id.* at 4–5.) On November 11, 2013, Plaintiff underwent an MRI ordered by her treating neurologist Dr. Casilda Balmaceda. (*Id.* at 6.) Based on the MRI and her physical exam, Dr. Balmaceda assessed that Plaintiff had vestibular issues and paresis in

---

[1] A more detailed description of the underlying facts and procedural history is contained in Judge Netburn's Report and Recommendation, dated May 25, 2017. (Doc. 25.)

[2] "R&R" refers to Judge Netburn's Report and Recommendation, dated May 25, 2017. (Doc. 25.)

2

the right arm. (*Id.*) She visited Dr. Balmaceda again several more occasions, and Dr. Balmaceda wrote a letter on behalf of Plaintiff stating that Plaintiff suffered from migraine headaches, cervicalgia with multiple herniated discs, severe depression, sinusistis, and severe dizziness. (*Id.* at 6–7.) Dr. Balmaceda noted that Plaintiff had "severe vestibular dysfunction," a permanent condition that was severe enough "to prevent her from any gainful employment." (*Id.*)

Plaintiff also visited several psychiatric specialists. On March 1, 2013, Plaintiff began seeing Dr. James McKnight. (*Id.* at 7.) Dr. McKnight noted that Plaintiff was dwelling on the "stroke" she allegedly had in October 2012, that she reported difficulty walking and moving her arms, and that much of Plaintiff's depression stemmed from the trauma of the "stroke." (*Id.*) He also noted that Plaintiff appeared alert and oriented, with a logical thought process and intact memory, but diagnosed Plaintiff with a mood disorder and adjustment disorder with depressed mood. (*Id.*) He assigned Plaintiff a GAF score of 65. (*Id.*) Plaintiff continued to visit Dr. McKnight, as well as a licensed social worker named Selena Jacobson, who submitted a letter on Plaintiff's behalf stating that Plaintiff needed disability benefits due to her health problems and depression. (*Id.* at 7–8.)

On February 19, 2013, Plaintiff visited a consulting physician named Dr. Angela Fairweather. (*Id.* at 8.) Dr. Fairweather performed certain cognitive tests of Plaintiff and determined that her intellectual functioning was estimated to be "in the borderline range" due to her cognitive defects. (*Id.*) However, Dr. Fairweather concluded that Plaintiff could follow and understand simple directions, perform simple tasks independently, and make appropriate decisions. (*Id.*) She noted that Plaintiff had moderate difficulty maintaining a regular schedule and moderate to significant difficulty dealing appropriately with stress. (*Id.* at 9.) Dr. Fairweather concluded that Plaintiff may be moderately impaired in her ability to function on a

3

daily basis.  (*Id.*)  She diagnosed Plaintiff with major depressive disorder and borderline intellectual functioning.  (*Id.*)

Plaintiff filed an application for SSI on January 14, 2013, claiming disability as of October 30, 2012 due to a NSTEMI, asthma, headaches, cervical degenerative disease, an alleged stroke, and mental health conditions.  (R&R 1.)  After a hearing before Administrative Law Judge ("ALJ") Mark Solomon on May 13, 2014, where Plaintiff appeared pro se, the ALJ denied Plaintiff's claim for benefits on September 19, 2014.  (*Id.*)  The ALJ found that while she had severe impairments, Plaintiff maintained a functional capacity to perform light work, except that she could not climb ropes, ladders, or scaffolds, work at unprotected heights or with hazardous machinery, or be in areas with concentrated exposure to respiratory irritants.  (*Id.*)

Plaintiff obtained counsel and submitted exceptions and additional medical evidence, including an October 2014 mental impairment questionnaire completed by Dr. McKnight, to the Appeals Council.  (*Id.* at 2–3.)  The questionnaire indicated that Plaintiff was "unable to meet competitive standards" in all areas of skilled and unskilled work and had "marked" difficulties in activities of daily living, social functioning, and concentration, persistence, and pace.  (*Id.* at 14–15.)  The questionnaire also noted that Plaintiff would miss more than four days of work monthly due to her impairments.  (*Id.* at 15.)  The Appeals Council declined to consider the questionnaire because it determined that the information in it was "about a later time."  (*Id.*)  The Appeals Council denied review of the ALJ's decision.  (*Id.* at 2–3.)

Plaintiff filed this action on May 6, 2016.  (Doc. 1.)  I referred the case to Judge Netburn on August 22, 2016.  (Doc. 10.)  Plaintiff filed her motion for judgment on the pleadings on November 8, 2016, (Docs. 19–20), and Defendant cross-moved for judgment on the pleadings on January 9, 2017, (Docs. 21–22).  Plaintiff filed a reply on January 9, 2017, (Doc. 23), and

Defendant filed a reply on February 21, 2017, (Doc. 24). Judge Netburn issued her Report and Recommendation on May 25, 2017. (Doc. 25.) Plaintiff filed her objections on June 22, 2017, (Doc. 28), and Defendant filed her response on July 6, 2017, (Doc. 29).

## II. **Legal Standards**

### A. *Review of the Magistrate Judge's Report*

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). A party may make objections to a report and recommendation "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). The district court "may adopt those portions of the report to which no 'specific, written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 72(b)). "If a party timely objects to any portion of a magistrate judge's report and recommendation, the district court must 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *Bush v. Colvin*, No. 15 Civ. 2062 (LGS) (DF), 2017 WL 1493689, at *4 (S.D.N.Y. Apr. 26, 2017) (quoting *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015)).

A party's objection "must be specific and clearly aimed at particular findings in the R&R." *Bussey v. Rock*, No. 12-CV-8267 (NSR) (JCM), 2016 WL 7189847, at *2 (S.D.N.Y. Dec. 8, 2016) (internal quotation marks omitted). "[T]he court will review the R&R strictly for clear error when a party makes only conclusory or general objections, or simply reiterates the original arguments." *Id.* (internal quotation marks omitted); *see also Ortiz v. Barkley*, 558 F.

Supp. 2d 444, 451 (S.D.N.Y. 2008) (noting that reviewing court "is only obliged to review the Report for clear error" where "objections largely reiterate the arguments made to, and rejected by" the magistrate judge); *Vega v. Artuz*, No. 97 Civ. 3775, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002) ("[O]bjections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition will not suffice to invoke *de novo* review of the magistrate's recommendations.").

### B. *Review of the Commissioner's Decision*

In reviewing a social security claim, "it is not [the court's] function to determine *de novo* whether plaintiff is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)); *see also Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007). Instead, a reviewing court considers merely whether the correct legal standards were applied and whether substantial evidence supports the decision. *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); *see also* 42 U.S.C. § 405(g) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence" means "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess*, 537 F.3d at 127 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). It is "a very deferential standard of review—even more so than the 'clearly erroneous' standard." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)). "The substantial evidence standard means once an ALJ finds facts, [a reviewing court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Id*. (internal quotation marks omitted).

### C. *Disability Standard*

To be considered disabled under the SSA, a claimant must show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment," which has lasted or can be expected to last for at least 12 months, that is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work." 42 U.S.C. §§ 423(d)(1)(A), (2)(A). The Commissioner has established a five-step evaluation process to determine whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. . . . [T]he claimant bears the burden of proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). "The Social Security regulations define residual functional capacity as the most the claimant can still do in a work setting despite the limitations imposed by his impairments." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013).

### III.  Discussion

Plaintiff objects to Judge Netburn's Report on two grounds: (1) Dr. McKnight's October 2014 report substantially supports Plaintiff's claim of disability and were the factfinder to consider the report, there is a reasonable possibility that it would have reached a different

7

conclusion; and (2) it was not harmless error for the ALJ to reject the assessment that Plaintiff had moderate to significant difficulty dealing with stress. (Pl.'s Obj. 3–9.)[3] Because I find that remand is appropriate under Plaintiff's first argument, I do not address the second.

Judge Netburn concluded that although it was error for the ALJ not to request a treating source opinion from Dr. McKnight, that error has been rectified by the fact that Dr. McKnight's October 2014 report is now part of the record before the court. (R&R 19–21.) She went on to consider whether substantial evidence in the record, including Dr. McKnight's report, supported the ALJ's determination. (*See id.* at 21.) Plaintiff takes issue with the standard applied by Judge Netburn and argues that the appropriate inquiry is whether Dr. McKnight's report presents a "reasonable possibility" that, had the ALJ considered the report, the ALJ would have reached a different result. (Pl.'s Obj. 4.)

After the ALJ decision, Plaintiff retained counsel and submitted McKnight's October 2014 report to the Appeals Council. (R&R 14–15.) However, the Appeals Council incorrectly determined that the information in the report was "about a later time" and therefore it did not "affect the decision about whether [Plaintiff] was disabled beginning on or before [the date of the ALJ's decision]." (*Id.* at 15.) Judge Netburn correctly explained that the Appeals Council was incorrect in making that determination because the information clearly related to the period prior to the ALJ's determination. (*Id.* at 20 n.1.) Judge Netburn proceeded to analyze Dr. McKnight's report as part of the record as a whole and determined that there was nevertheless substantial evidence supporting the ALJ's decision.

---

[3] "Pl.'s Obj." refers to Plaintiff's Objections to the Magistrate Judge's May 25, 2017 Report and Recommendation, filed on June 22, 2017. (Doc. 28.)

8

Defendant contends this was the correct approach pursuant to settled Second Circuit case law. (Def.'s Resp. 3–4.)[4] The Second Circuit has held that "new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). In particular, "[w]hen the Appeals Council denies review after considering new evidence, we simply review the entire administrative record, which includes the new evidence, and determine, as in every case, whether there is substantial evidence to support the decision of the [Commissioner]." *Id.* at 46. The Second Circuit's reasoning was based on the fact that "even when the Appeals Council declines to review a decision of the ALJ, it reaches its decision only after examining the entire record, including the new evidence submitted after the ALJ's decision." *Id.* at 45.

However, the Appeals Council here did not consider the substance of Dr. McKnight's report in making its determination not to review the ALJ's decision. Rather, the Appeals Council declined to consider the report because it determined that the information in the report did not relate to the relevant time period. (*See* R&R 20 n.1; *see also* 20 C.F.R. § 416.1470(a) (stating that Appeals Council shall consider additional evidence only if it "relates to the period on or before the date of the [ALJ] hearing decision"); *see also Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (only limitations on district court review of new evidence submitted to Appeals Council is that it be "new and material and that it must relate to the period on or before the ALJ's decision.").) As Judge Netburn pointed out, the report does in fact relate to the relevant time period, and it was a mistake for the Appeals Council to find that it was "new information about a later time." (*Id.*) Since the Appeals Council declined to consider Dr. McKnight's report—

---

[4] "Def.'s Resp." refers to Defendant's Responses to Plaintiff's Objections, dated July 6, 2017. (Doc. 29.)

9

contrary to Judge Netburn's determination—the report did not become part of the record.

The question, then, is what is the appropriate standard under which to consider Dr. McKnight's report where the Appeals Council did not consider the substance of the new evidence. Under similar circumstances, a court in the Eastern District of New York applied the standard articulated in the sixth sentence of 42 U.S.C. § 405(g), and remanded the case to the Commissioner for further administrative proceedings. *See Jehn v. Barnhart*, 408 F. Supp. 2d 127, 135–36 (E.D.N.Y. 2006) (remanding case where it was "unclear from the record" whether the Appeals Council considered certain new evidence in determining not to review plaintiff's application) .[5] This provision states that "[t]he court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see also Jehn*, 408 F. Supp. 2d at 136. Because the Appeals Council failed to consider the substance of Dr. McKnight's report in making the determination to deny review of the ALJ's decision, I find that the standard articulated in the sixth sentence of § 405(g) is the appropriate standard to apply in these circumstances. The Second Circuit has held that, under § 405(g), remand for the consideration of new evidence is appropriate upon a three-part showing:

> An appellant must show that the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative. The concept of materiality requires, in addition, a reasonable

---

[5] It appears that the Second Circuit has not been presented with a case in which evidence was improperly ignored by the Appeals Council, but other circuit courts that have considered these circumstances have taken a similar approach to that of the *Jehn* court. *See, e.g.*, *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321& n.5 (11th Cir. 2015) (distinguishing cases in which the Appeals Council accepts additional evidence, considers it, and denies review, and finding that "when the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate"); *Farrell v. Astrue*, 692 F.3d 767, 772 (7th Cir. 2012) (reversing a district court judgment and remanding to the Commissioner where "the Appeals Council committed legal error by ignoring" a medical opinion); *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) ("If the Appeals Council fails to consider qualifying new evidence, the case should be remanded for further proceedings.").

> possibility that the new evidence would have influenced the Secretary to decide claimant's application differently. Finally, claimant must show (3) good cause for her failure to present the evidence earlier.

*Lisa v. Sec'y of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991) (internal citations and quotation marks omitted).

First, Dr. McKnight's October 2014 report is new and not merely cumulative of what is already in the record. As Judge Netburn explained, Dr. McKnight's initial January 3, 2013 assessment and March 3, 2013 follow up—both of which were considered by the ALJ in his September 2014 denial of Plaintiff's claim for benefits—do not provide a sufficient basis to infer Dr. McKnight's opinions as to Plaintiff's mental impairments, particularly on the question of whether she would have moderate difficulties keeping a schedule or moderate to significant difficulties dealing appropriately with stress. (R&R 19.)

Second, Dr. McKnight's report is material. There is no question that it is relevant to Plaintiff's condition during the time period for which benefits were denied. (*See id.* at 20 n.1.) Moreover, as a treating physician of Plaintiff, Dr. McKnight's report is certainly probative of the extent of Plaintiff's mental impairment. I also find that there is a reasonable possibility that the report would have influenced the ALJ to decide Plaintiff's application differently. Dr. McKnight's report states that Plaintiff is unable to meet competitive standards in understanding, remembering, carrying out very short and simple instructions, making simple work-related decisions, asking simple questions or requesting assistance, maintaining socially appropriate behavior, using public transportation, and adhering to basic standards of neatness and cleanliness. (*Id.* at 25.) The report also noted that Plaintiff would miss more than four days of work per month due to her impairments. (*Id.* at 15.) As one of Plaintiff's treating physicians, those conclusions could reasonably influence the ALJ to decide Plaintiff's application

11

differently.  Although Judge Netburn points out several inconsistencies between Dr. McKnight's report and other evidence in the record, (*id.*), a treating physician's opinion should still be entitled to "some extra weight" because "the treating source is inherently more familiar with a claimant's medical condition than are other sources." *Schisler v. Bowen*, 851 F.2d 43, 47 (2d Cir. 1988).  Indeed, "a finding that a treating source medical opinion is . . . inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference . . . ."  Social Security Ruling 96-2p, 61 Fed. Reg. 34490–92 (July 2, 1996).

Finally, since the ALJ did not fulfill his responsibility to develop the record by obtaining the report, *see* 20 CFR § 404.1512(b) (ALJ has a responsibility to develop Plaintiff's "complete medical history for the 12-month period" prior to the last month of disability insurance); 20 CFR § 416.912(b) (ALJ has a responsibility to develop Plaintiff's "complete medical history for at least the 12 months preceding the month in which" Plaintiff files application), I find that there was good cause for Plaintiff's "failure to present the evidence earlier."  *See Lisa*, 940 F.2d at 43.

Therefore, I find that remand to the Commissioner is appropriate in order to consider new evidence that was not considered initially, namely the October 2014 report of Dr. McKnight.

IV. **Conclusion**

For the foregoing reasons, I reject the Report as to its conclusions regarding Dr. McKnight's October 2014 report.  Plaintiff's and Defendant's motions for judgment on the pleadings, (Docs. 19, 21), are DENIED, and this case is remanded pursuant to sixth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion & Order.

The Clerk of Court is respectfully directed to terminate the open motions at Documents 12 and 14 and close this case.  The parties may apply to reopen the case upon the filing of

12

additional or modified findings of fact and a decision vacating, modifying, or affirming the Commissioner's prior decision in this case.

SO ORDERED.

Dated: March 20, 2019
      New York, New York

Vernon S. Broderick
United States District Judge